IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RITE AID HDQTRS CORP. d/b/a<br>RITE AID CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>CRAYTON LANDSCAPING AND<br>BUILDING MAINTENANCE, INC.<br><br>and<br><br>AUTO-OWNERS INSURANCE<br>COMPANY<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br>No. 12-05775 |

Goldberg, J.                                                                                                   August 5, 2013

## MEMORANDUM OPINION

Plaintiff, Rite Aid Headquarters Corporation d/b/a Rite Aid Corporation ("Rite Aid") originally brought this suit in the Court of Common Pleas in Philadelphia County against Defendants Crayton Landscaping and Building Maintenance, Inc. ("Crayton") and Auto-Owners Insurance Company ("Auto-Owners"), for their failure to indemnify Rite Aid in a slip-and-fall suit. Rite Aid alleges that Crayton is contractually obligated to indemnify, defend and hold it harmless from and against any claims arising from Crayton's contract to perform snow and ice removal services at various Rite Aid stores in Ohio. Rite Aid further alleges that Auto-Owners is

1

obligated to indemnify Rite Aid under an insurance policy Crayton carried pursuant to its contract with Rite Aid.

The complaint was originally filed in the Philadelphia Court of Common Pleas on September 17, 2012 and subsequently removed to this Court. Thereafter, Defendants filed a motion to dismiss, or, in the alternative, to transfer the suit to the United States District Court for the Northern District of Ohio, Cleveland Division. On October 31, 2012, Rite Aid filed a motion to remand. For the reasons stated below, Rite Aid's motion will be granted, and Defendants' motion to dismiss, or alternatively to transfer venue, will be denied.

I.      **FACTUAL AND PROCEDURAL HISTORY**

The dispute in this case emanates from a slip and fall occurring on a Rite Aid property located in Mayfield Heights, Ohio ("the Property"). Prior to this occurrence, Rite Aid had entered into a Master Service Agreement ("the Agreement") with Crayton. Rite Aid alleges that (1) "at all relevant times," Crayton was contractually obligated to perform snow and ice removal services at the Property; (2) the Agreement required Crayton to indemnify, defend and hold Rite Aid harmless from any claims or liabilities that might arise from Crayton's Agreement to perform snow and ice removal services at the Property; and (3) Crayton was required to carry insurance coverage for personal injury perils and contractual liability that named Rite Aid as an "additional insured." (Compl., Doc. No. 1, Ex. A, ¶¶ 9, 12-13). Crayton purchased a policy with Auto-Owners as required by the Agreement. (Id. at ¶ 14.)

Under the Agreement, Crayton committed to "provide all snow and ice removal services for parking lots, service areas, and sidewalks and walkways," at the Property. (Master Service

Agreement, Doc No. 6-3, Ex. B.)  The Agreement also contained the following choice of law provision and forum selection clause:

> This agreement shall be construed and enforced under and in accordance with the laws of the Commonwealth of Pennsylvania.  Any and all disputes or claims relative to this Agreement shall be negotiated, tried, determined, or otherwise handled and disposed of only in the appropriate state court of the Commonwealth of Pennsylvania.  [Crayton] hereby consents to the personal jurisdiction of such court over it in such matter.

(Id. at § I(6).)

Rite Aid alleges that, on February 10, 2011, Bertha Wulkam, a customer at the Property, slipped and fell on snow and/or ice that remained on the Property from a prior snowstorm, resulting in serious injuries. (Compl. ¶¶ 6-8.)  Wulkam initiated litigation to recover for her injuries while the Agreement between Crayton and Rite Aid was in effect.  (Id. at ¶¶ 15-16; Ex. A, p. 1.)

Rite Aid brought the lawsuit currently before the court due to Defendants' failure to provide indemnification for the funds expended in defending and resolving Wulkam's claim.[1] (Compl. ¶¶ 17, 19.)  Rite Aid alleges that it contacted Crayton requesting indemnification on February 14, 2011; that Crayton informed Auto-Owners of Wulkam's claim; that Rite Aid reached a settlement agreement with Wulkam for $99,608.27 on October 11, 2011; and that Rite

---

[1] The Agreement provides for indemnification as follows:

> [Crayton] acknowledges and agrees to indemnify, defend and hold Rite Aid harmless from and against any and all claims, losses, liability, damages, fines, sanctions and expenses, including reasonable attorney's fees arising or resulting, directly or indirectly in connection with any . . . intentional or negligent act or omission of [Crayton] or [Crayton's] agents or employees with respect to the performance of its obligations under this Agreement.

(Master Service Agreement § II(1).)

Aid again requested indemnification from Defendants following its settlement agreement. (Id. at 15-16, 18-19.) Rite Aid claims that both Defendants failed, and continue to refuse, to provide indemnification, contrary to the Agreement and the insurance policy. (Id. at 17, 19.)

Defendants removed the case to this Court on October 10, 2012 on the basis of diversity jurisdiction, under 28 U.S.C. 1441,[2] and thereafter filed a motion to dismiss, or, in the alternative, to transfer the suit to the United States District Court for the Northern District of Ohio, Cleveland Division. Rite Aid contests the removal and filed a motion to remand on October 31, 2012. All of these motions are now fully briefed and ready for disposition.

## II.   MOTION TO REMAND

### A.   Standard of Review

A motion to remand under 28 U.S.C. § 1447 shall be granted where the standards for removal under 28 U.S.C. §§ 1441 and 1446 have not been met. Hogan v. Raymond Corp., 777 F. Supp. 2d 906, 912 (W.D. Pa. 2011). In such actions, the defendant bears the burden of demonstrating the propriety of removal. Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990). "The removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" Id. (quoting Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987)). Under 28 U.S.C. § 1447(c), a trial court must "remand a case whenever it appears that the district court lacks subject matter jurisdiction or

---

[2] Plaintiff Rite Aid is a Delaware corporation with its principal place of business in Camp Hill, Pennsylvania. (Defs.' Notice of Removal, Doc No. 1, ¶ 3.) Defendant Crayton is an Ohio corporation with its principal place of business in Maple Heights, Ohio. (Id. at ¶ 4.) Defendant Auto-Owners is a Michigan corporation with its principal place of business in Lansing, Michigan. (Id. at ¶ 5.)

when improper removal procedures are followed." Bradgate Assocs., Inc. v. Fellows, Read & Assocs., Inc., 999 F.2d 745, 749-50 (3d Cir. 1993) (quotation marks omitted).

### B.      Discussion

In support of its motion to remand, Rite Aid argues that removal was improper because Crayton was not able to give consent. By agreeing to the forum selection clause contained within the Agreement, Rite Aid asserts that Crayton waived its right to consent to removal and thus, there could not be unanimous consent.

Defendants respond that removal was proper because where one or multiple defendants waive their right to consent to removal by signing a forum selection clause, other defendants should not be barred from removing a case to federal court if all defendants give <u>actual</u> consent. Defendants also posit that even if the forum selection clause would effectively bar all Defendants from removing to federal court, that clause is void as against Ohio public policy.

### 1.      Effect of Consent Waiver to Bar Removal for All Defendants

As Rite Aid accurately observes, removal to federal court based on diversity jurisdiction ordinarily requires all defendants to give consent, under 28 U.S.C. § 1446. See Page v. City of Philadelphia, 2008 WL 4710773, at *2 (E.D. Pa. Oct. 21, 2008) (citing Chi., Rock Island & Pac. Ry. Co. v. Martin, 178 U.S. 245, 248 (1900)). Parties may contractually waive their right to consent to removal by agreeing to a forum selection clause, if the clause's plain and ordinary meaning indicates as much. New Jersey v. Merrill Lynch & Co., Inc., 640 F.3d 545, 547-548 (3d Cir. 2011) (citing Buono Sales, Inc. v. Chrysler Motors Corp., 449 F.2d 715, 721 (3d Cir.1971)).

The United States Court of Appeals for the Third Circuit has previously found forum selection clauses to constitute a waiver where the clause required litigation arising from the parties' agreement to be brought in state court.  See id. at 550;[3] Foster v. Chesapeake Ins. Co. Ltd., 933 F.2d 1207, 1217 (3d Cir. 1991).[4]  The Third Circuit has not, however, directly considered a removal/forum selection situation where one or some, but not all, defendants have waived the ability to consent to removal.  Nonetheless, other courts have addressed this issue and have held that unanimity of consent is impossible where any defendant has waived the right to consent through a forum selection clause.  See Cattleman's Choice Loomix, LLC v. Heim, 2011 WL 1884720, at *3 (D. Colo. May 18, 2011) (finding where one removing defendant has agreed to a forum selection clause, the unanimity requirement cannot be met); Insight Holding Grp., LLC v. Sitnasuak Native Corp., 685 F. Supp. 2d 582, 589-90 (E.D. Va. 2010) (same).

Here, Defendants contend that "[w]hen the result has such a serious effect on the Defendant Auto-Owners, such as to deprive it of access to the federal courts and possibly compel it to litigate in an inconvenient forum," we should ignore all precedent from outside the Third Circuit.  (Defs.' Resp. to Pl.'s Mot. to Remand p. 4.)  For several reasons, we do not find this argument to be persuasive.

---

[3] The forum selection clause in Merrill Lynch stated: "In connection with any dispute, controversy or claim arising out of … [this Agreement], each of the parties hereto agrees … that exclusive jurisdiction and venue shall lie in the appropriate courts of the State [of] New Jersey." Merrill Lynch, 640 F.3d at 548 (quotation marks omitted).

[4] The forum selection clause in Foster stated that Chesapeake "at the request of the Company [Mutual Fire], w[ould] submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction."  Mutual Fire chose to bring suit in Pennsylvania state court.  Foster, 933 F.2d at 1209.

First, the forum selection clause at issue unambiguously reflects that Crayton waived its right to consent to removal, such that it could not remove this case if it were the sole Defendant. The Agreement clearly dictates that only state courts of the Commonwealth of Pennsylvania may try disputes arising from the Agreement. Indeed, in Merrill Lynch and Foster, the Third Circuit clearly stated that a defendant that agreed to a valid forum selection clause had waived its ability to consent to removal. Defendants cannot, and do not, argue otherwise.

Second, we find cases from within this district that have strictly interpreted the removal statute's unanimity requirement to be persuasive. See Shepard v. City of Philadelphia, 2001 WL 92300, at *2-3 (E.D. Pa. Jan. 31, 2001) (where the court rejected the "refined" unanimity rule, which provides that a removing party need not obtain the consent of a co-defendant who would not be allowed to remove if it were the sole defendant); Collins v. Am. Red Cross, 724 F. Supp. 353, 359-60 (E.D. Pa. 1989) (where the court rejected the Red Cross' assertion that because it was the only defendant that could remove, the other defendants' consent was not required). These cases follow the basic principle that "any doubts concerning the removal procedure should be resolved in favor of remand." Shepard, 2001 WL 92300, at *1; see also Collins, 724 F. Supp. at 358.

Because removal requires valid consent from all Defendants, and the Agreement's forum selection clause waives Crayton's ability to consent, we find that removal was improper. We agree with the district courts that have determined that one defendant's valid agreement to litigate in state court prevents any other defendants, who have not agreed to such waiver, from meeting the unanimity requirement. Accordingly, if the forum selection clause is valid and enforceable (see infra), this case must be remanded.

### 2. Forum Selection Clause Validity

Defendants also maintain that removal was proper and remand is unnecessary because, even if the forum selection clause would ordinarily bar Defendants from removing to federal court, that clause is void due to Ohio public policy, per § 4113.62(D)(2). The relevant statutory language is as follows:

> Any provision of a construction contract . . . for an improvement . . . to real estate in this state that requires any litigation, arbitration, or other dispute resolution process provided for in the construction contract . . . to occur in another state is void and unenforceable as against public policy. Any litigation, arbitration, or other dispute resolution process provided for in the construction contract . . . shall take place in the county or counties in which the improvement to real estate is located or at another location within this state mutually agreed upon by the parties.

OHIO REV. CODE ANN. § 4113.62(D)(2). Given this language, we must next consider whether this statute is applicable to a contract for snow and ice removal.

"Construction Contract" is defined within the statute as "a contract or agreement for the design, planning, construction, alteration, repair, maintenance, moving, demolition, or excavation of a building, structure, highway, road, appurtenance, or appliance situated on real estate located in this state." OHIO REV. CODE ANN. § 4113.62(G)(5) . "Improvement" to real estate possesses the same meaning as set forth in § 1311.01(J). Id. at § 4113.62(G)(4). § 1311.01(J) defines "improvement" as "constructing, erecting, altering, repairing, demolishing, or removing any building or appurtenance thereto . . . the excavation, cleanup, or removal of hazardous material or waste from real property."

Defendants argue that snow removal, the service provided for in the Agreement, is a type of maintenance, and thus consistent with the definition of "construction contract." Rite Aid

replies that the contract at issue falls outside the scope of the Ohio public policy, because it does not qualify as a construction contract for an improvement to real estate.[5]  Specifically, Rite Aid asserts that the services provided for in the contract do not fall under §§ 4113.62(G)(5) and 1311.01(J) because they are not construction; they are not performed on a "building, structure, highway, road, appurtenance, or appliance"; and they are not services "for an improvement."

Very few cases have dealt with § 4113.62(D)(2), and we are unaware of any precedent interpreting the terms "construction contract" and "improvement" found therein.  Defendants also have not provided any authority to support their position that § 4113.62(D)(2) applies to this case.  Our overall review of the statute reflects that its focus is upon contracts for the building or demolishing of Ohio real estate.  While we recognize that snow removal could potentially qualify as "maintenance," and that Rite Aid's sidewalks and parking lots are an "appurtenance," we find that a snow removal services agreement is not a contract "for an improvement to real

---

[5] Rite Aid seems to accept Defendants' contention that, although suit was filed in Pennsylvania, it would be proper to apply Ohio law in order to determine whether public policy voids the choice of law provision. Instead, Rite Aid focuses its argument on the inapplicability of the Ohio public policy to this specific type of contract. However, we are skeptical of Defendants' assertion that it is appropriate to consider the Ohio public policy in our analysis. "Forum selection clauses are presumptively valid and enforceable unless enforcement is shown by the resisting party to be unreasonable under the circumstances." Maaco Franchising, Inc. v. Tainter, 2013 WL 2475566, at *3 (E.D. Pa. June 10, 2013) (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972)) (quotation marks omitted). A forum selection clause should only be invalidated if a court finds "(1) the clause was invalid for such reasons as fraud or overreaching, or (2) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought, or (3) that enforcement of the clause would be so gravely difficult and inconvenient as to be unreasonable and unjust." Id. (quoting Intermetals Corp. v. Hanover Int'l Aktiengesellschaft Fur Industrieversicherungen, 188 F. Supp. 2d 454, 458 (D.N.J. 2001)). It appears that this Court should be considering the public policy of Pennsylvania, not Ohio. However, we find that both analyses ultimately lead to the same result. See Susquehanna Patriot Commercial Leasing Co., Inc. v. Holper Indus., Inc., 928 A.2d 278, 283 (Pa. Super. 2007) (noting that there is no public policy in Pennsylvania that would void an otherwise valid and reasonable forum selection clause**).**

estate." Such services do not involve "constructing, erecting, altering, repairing, demolishing, or removing any building or appurtenance thereto" nor do they contemplate "the excavation, cleanup, or removal of hazardous material or waste from real property." We thus conclude that § 4113.62(d)(2) does not invalidate the Agreement's forum selection clause. Because we determined supra that the forum selection clause prevented unanimous consent to removal, we find that remand is appropriate.

### III.   CONCLUSION

The forum selection clause found within the Agreement between Rite Aid and Crayton is valid and enforceable and constitutes a waiver of Crayton's ability to consent to removal. Therefore, this case must be remanded for improper removal due to lack of unanimous consent. Defendants' motion to transfer venue is denied as moot.

Our Order follows.